# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

KEVIN DERELL BILLIOUPS,      )
                             )
    Plaintiff,               )    CASE NO. 3:11-0195
                             )    JUDGE HAYNES
v.                           )
                             )
METROPOLITAN GOVERNMENT OF   )
NASHVILLE AND DAVIDSON       )
COUNTY, TENNESSEE, et al.,   )
                             )
    Defendants.              )

## MEMORANDUM

Plaintiff, Kevin Derell Billioups, filed this action under 42 U.S.C. §1983 against the Defendants: Metropolitan Government of Nashville and Davidson County, ABL, Timothy Hindsley, Thomas Wright and Vernistine Dulin. Plaintiff asserts claims for violations of his Eighth Amendment of the United States Constitution because he was negligently provided "contaminated" food trays and food while Plaintiff was in the Davidson County jail.

Before the Court is the Defendants' motion for summary judgment (Docket Entry No. 78) contending, in essence: that Plaintiff lacks proof to support a judgment on his claims; that Defendants Hindsley, Wright and Dulin are entitled to qualified immunity and that Plaintiff has not proven a custom or practice of Defendants ABL and Metropolitan Government of Nashville Davidson County to support a judgment against these entities. Plaintiff has a filed response with attachments.

### A. Findings of Fact[1]

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary

Plaintiff, Kevin Billioups, was a pretrial detainee at the Davidson County Sheriff's Office Criminal Justice Center. (Docket Entry No. 61, Amended Complaint at p. 6). Plaintiff alleges that he received an "unsanitary dietary tray" on January 30 and 31, 2011 and February 1, 2011. Id. Plaintiff alleges he ate large amounts of food from these trays before discovering the trays were "unsanitary." Id. Plaintiff alleges that he received unsanitary lunch trays from ABL containing "food particles from breakfast or prior to meals upon it." Id. Plaintiff also states that his uneaten food from these "contaminated" trays were then placed on "uncontaminated" trays and reserved to him. Id.

> Serving me food on an unsanitary food tray more than once, allowing contaminated food items to be re-served to me instead of changing food along with unsanitary tray [sic] on all occasions which brought forth a dangerous condition which is degrading and abusive conditions [sic]

(Docket Entry No. 78-3, Plaintiff's Interrogatory Response, at ¶ 9).

In his Amended Complaint, Plaintiff does not allege the existence of an injury. (Docket Entry No. 61, Amended Complaint at p. 6) Yet, in his original complaint, Plaintiff alleges "some type of stomach virus (food poisoning) which I had went to the clinic and was prescribed these medications: Zofran and Loperamide to relieve me of the very painful and constant case of diarreha [sic] and vomiting." (Docket Entry No. 1, Complaint at p. 5). He also stated:

> The sergeants, food supervisors (ABL) and officials here at CJC of DCSO must do what is reasonable, the harm does not have to be easily preventable. It is enough that the officers (sgt's), ABL staff acted or failed to act accordingly despite his/her knowledge of the substantial risk of serious harm to my future

---

judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are not any material factual disputes. Thus, this section constitutes finding of facts under Fed. R. Civ. P. 56(d).

health.

(Docket Entry No. 78-3, Plaintiff's Interrogatory Response, at ¶ 10).

For this allegation, Plaintiff states:

CJC's personnel gave evidence of bad motives and attitudes by failing to respond reasonably to a known risk by repeated examples of negligent act which disclosed a pattern of conduct or by showing systematic or gross deficiencies in the preparation of my food and eating utensils.

Id. at ¶ 11.

In opposition to Defendants' motion for summary judgment, Plaintiff submitted several grievances that read, in pertinent part:

   Date:      March 7, 2011

             \* \* \*

   Function Area:   Food Services
   Response:    Your tray should have been replaced with new food
           on a clean try.
           Sustained.

(Docket Entry No. 88 at 26).

   Date:      March 21, 2011

             \* \* \*

   Description:   Food Cold
   Response:    We have put new procedures into place that should
           address your issues. Please advise an officer or sgt.
           if you have any further problems.
           Sustained

Id. at 27.

   Date:      February 14, 2011

             \* \* \*

   Description:   Other
   Response:    Offender Billioups on the day in question you

brought your tray to me I told you to give your diet tray back to the rockman and I would be more than happy to replace your diet. You however were far more concerned with getting a picture of your tray for your attorney. You didn't give your tray to the rockman as I told you to. When chow was done I went back to you to get your tray and you had eaten part of it. I still took your tray went to the kitchen and had them take what you had left on your tray and put it on another tray. I also addressed this issue with the head of ABL and was told that she would take measures to try to insure that the trays were cleaned more thoroughly.

Id. at 28.

Date: February 17, 2011

\* \* \*

Functional Area: Food Services
Response: IN RESPONSE TO YOUR GRIEVANCE I HAVE CHECKED INTO THIS AND NO ONE REMEMBERS THIS SITUATION. NOT SAYING IT DIDN'T HAPPEN BUT IF IT DID THEN YOU SHOULD HAVE HAD A NEW TRAY AND THE DIRTY TRAY COMPLETELY DISPOSED OF. MY SUPERVISORS SAID A TRAY NEVER CAME DOWN LIKE THAT. WHICH IF THE COS HAD EXTRA TRAYS ON THE FLOOR THEY SOMETIMES TRY AND CORRECT THEM THEMSELVES. I HAVE BOTH SHIFT DO A MORE THROUGH TRAY CHECK TO MAKE SURE THEY ARE CLEANED AND SAITIZED PROPERLY.

UNSUSTAINED

Id. at 29.

Date: March, 1, 2011

\* \* \*

Description: Diet
Response: IN RESPONSE TO YOUR GRIEVANCE YOU

4

SHOULD BE RECEIVING YOUR HOT WATER WITH YOUR BREAKFAST MEAL. I WILL GET WITH THE SUPERVISORS AND MAKE SURE YOU CONTINUE TO DO SO AND IF YOU DON'T TO MAKE SURE YOU DO.

UNSUSTAINED

Id. at 30.

Date: March 7, 2011

\* \* \*

Description: Food Cold
Response: IN RESPONSE TO YOUR GRIEVANCE THE WATER IS SENT UP HOT. IT IS UP TO THE OFFICERS TO GET IT TO YOU AS SOON AS THEY CAN ONCE IT LEAVES THE KITCHEN. WE HAVE NO CONTROL OVER THAT.

UNSUSTAINED

Id. at 31.

Date: April 05, 2011

\* \* \*

Description: Other
Response: IN RESPONSE TO YOUR GRIEVANCE WE APOLOGIZE FOR THIS. IT HAD BEEN LEFT ON THE WARMER TO KEEP HEAT UP AND KEEP HOT AND THE KOSHER PERSON FORGOT TO TURN IT DOWN. IT WILL BE BETTER MONITORED.

SUSTAINED

Id. at 32.

Date: April 05, 2011

\* \* \*

Description: Other

|  |  |  |
|---|---|---|
| | Response: | IN RESPONSE TO YOUR GRIEVANCE YOU SAID IN ANOTHER GRIEVANCE THAT THE RICE IS OVERCOOKED AND BURNT AND HOW YOU SAY IT WAS NOT COOKED COMPLETELY A FEW TIMES. WHEN YOU GET A MEAL THAT IS NOT CORRECT PLEASE HAVE IT RETURNED TO THE KITCHEN SO WE CAN CORRECT IT AND THIS WAY WE WILL KNOW THERE IS A PROBLEM.<br><br>UNSUSTAINED |
| Id. at 33. | | |
| | Date: | September 01, 2011<br><br>*  *  * |
| | Description:<br>Response: | Diet<br>IN RESPONSE TO YOUR GRIEVANCE THIS IS NOT CORRECT. YOUR MEALS HAVE BEEN SENT UP DAILY AND FROM MY INSPECTION OF THEM BEFORE THEY LEAVE THE KITCHEN CORRECTLY. ONCE THEY LEAVE THE KITCHEN THE OFFICERS HAVE CONTROL OF THEM.<br><br>UNSUSTAINED |
| Id. at 34. | | |
| | Date: | September 07, 2011<br><br>*  *  * |
| | Description:<br>Response: | Diet<br>IN RESPONSE TO YOUR GRIEVANCE I HAVE TALKED TO SGT. [C]RAWLEY (THERE IS NO [S]GT. fRAWLEY) AND HE STATES HE DOES NOT KNOW OF ANY INCIDENT LIKE THIS AND HE HAS NEVER HAD THIS TYPE CONVERSATION WITH YOU. I SPOKE TO COOKIE, THE [ABL] PERSON AND SHE STATES THIS NEVER HAPPENED AND THAT |

> SHE KNOWS WHAT THE RELIGIOUS MEAL IS
> AND THOSE ARE THE MEALS SHE SENDS UP
> AND IF THERE IS A PROBLEM WITH ANY
> MEAL NOT JUST RELIGIOUS SHE WILL
> CORRECT IT WITH HESITATION.
>
> UNSUSTAINED

Id. at 35.

As to medical treatment, Plaintiff completed two sick call requests dated 2/1/2011. (Docket Entry No. 78-1, Corts Affidavit at ¶¶ 1, 3). The first visit was completed at 1:00 a.m. Id. at ¶ 1. In that request, Plaintiff complains of "vomiting and diarrhea and harsh stomach cramps and sweating." Id. The sick call request was received and triaged on 2/2/11. Plaintiff was seen by a nurse practitioner by the name of J. P. Walker, RN shortly thereafter. Id. A Physician's Order dated 2/2/2011 reflects certain medications were prescribed for Plaintiff on 2/2/2011: "Tylenol bid for 7 days; Zolfram 8 mg. Po bid for 2 days and Lopercmicle 2 mg po bid for 2 days". Id. at ¶ 2.

Plaintiff'S other sick call request was completed at 1:30 p.m. on February 1, 2011. Id. at ¶ 3. In this request, Plaintiff complaints are that he "still has diarrhea, vomiting and stomach cramps from the food [he] ingested off unsanitary food tray." Id. This sick call request was received and triaged on 2/4/2011, but the nurse's comment reflects: "Problem resolved 2-8-11." Id. Plaintiff signed the sick call request from acknowledging that he was treated for this sick call. Id. Plaintiff did not make any sick call requests on January 30 or 31 of 2011. Id.

The sick call requests on 2/1/2011 are the only sick call requests related to Plaintiff's allegations of unsanitary food trays. Id.

ABL provides the food service for the CJC, but the jailers assign the inmates to work in

the kitchen with ABL assigning inmates' duties. (Docket Entry No. 78-2, Dulin Affidavit at ¶ 4). ABL employees supervise the inmates who work in the kitchen. Id. Vernistine Dulin, Senior Food Service Director with ABL for the past two years, supervises the ABL employees who supervise the inmates in the kitchen. Id. at ¶ 3. Dulin never prepared Plaintiff's food tray. Id. at ¶ 4. According to Dulin, if an inmate complains about a dirty tray, the inmate is instructed to return the tray to a corrections officer who takes the tray to the kitchen. Id. at ¶ 5. The food on the tray is thrown away and replaced with new food or a new tray. Id. This new tray is then sent to the inmate. Id. Dulin does not recall any inmate becoming sick as a result of the condition of a tray provided an inmate working under ABL at the CJC. Id. at ¶ 6.

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the

8

mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

<u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). But <u>see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

<u>Celotex</u>, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material

10

factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed</u>.'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>,

791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) requiring each party to provide a statement of undisputed facts to which the opposing party must respond.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.  The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.  A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6.  As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to

establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

To state a viable claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States" and (2) the deprivation was caused by a person while acting under color of state law. Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 155-56 (1978). Plaintiff's claims fall under the Eighth Amendment as claims involving food and medical care represent conditions of confinement. Wilson v. Seiter, 501 U.S. 294, 296 (1991). The Eighth Amendment requires the "basic necessities of civilized life" and include "reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety." Grubbs v. Bradley, 552 F.Supp. 1052, 1122 (M.D. Tenn. 1982). Moreover, for an Eighth Amendment violation "a prison official's act or omission must result in the denial of the 'minimal civilized measure of life's necessities.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994).

As to Plaintiff's "contaminated" food trays, the occasional presence of food particles on food trays will not support a judgment in a 1983 action. The isolated incidents of food contamination is insufficient to prove an Eighth Amendment violation. Tucker v. Rose, 955 F. Supp. 810, 815 (N.D. Ohio 1997). See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation") and Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992) (inmates routinely being served cold food contaminated with foreign

14

objects does not amount to an Eighth Amendment violation). Here, any contamination is minimal as on one occasion Plaintiff discovered "contamination" only after eating large amounts of food from these trays. Although Plaintiff had diarrhea and vomiting, Plaintiff received medications after his complaints, and the problem was soon resolved. The Plaintiff's single episode of diarrhea and vomiting does not prove an Eighth Amendment violation. Plaintiff gained approximately 15 to 20 pounds while in the CJC.

In any event, for his Eighth Amendment claims, Plaintiff must also prove that Defendants' acts or omissions caused "unnecessary and wanton infliction of pain," Wilson, 501 U.S. at 298 and that each Defendant was aware of a threat to his health or safety and acted with deliberate indifference to that threat. Id. at 302-303. Deliberate indifference requires a "state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Defendants responded to Plaintiff's sworn grievances about his food tray and food. ABL has defined procedure for inmates with dirty trays that are returned to the kitchen with replacement of new food on new trays. Therefore, the Court concludes that Plaintiff cannot establish Defendants' deliberate indifference to a substantial risk to Plaintiff's health.

As to Metro and ABL, Plaintiff cannot rely upon the respondeat superior doctrine. Polk County v. Dodson, 454 U.S. 312, 325 (1981). The Plaintiff must demonstrate that ABL and Dulin had a policy or procedure or condoned, encouraged, or participated in the conduct that allegedly violated Plaintiff's rights. Street v. Corrections Corp. of America, 102 F.3d 810, 817 (6th Cir. 1996); Birrell v. Brown, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). Plaintiff does not present any such proof.

For these reasons, the Court concludes that the Defendants' motion for summary

15

judgment should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the ____3rd____ day of May, 2012.

_____
WILLIAM J. HAYNES, JR.
United States District Judge